IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GARY E. BOWLING,**
**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**
**Defendant.**                                    No. 09 - CV - 00415 DRH

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Plaintiff Gary E. Bowling seeks judicial review of the Commissioner of Social Security's determination that plaintiff is not disabled and therefore not eligible for Disability Insurance Benefits and Supplemental Security Income (Doc. 20). Specifically, plaintiff claims that the Administrative Law Judge ("ALJ") erred in using Medical-Vocational Rule 202.15 to find plaintiff not disabled. Plaintiff argues that the ALJ erroneously determined that plaintiff at age 55 was an individual closely approaching advanced age, when in fact plaintiff was an individual of advanced age. Consequently, he believes the ALJ should have applied Rule 202.06 for individuals of advanced age and found plaintiff to be disabled. As discussed below, the Court concludes that the rule cited by plaintiff is incorrect and that the ALJ properly relied on testimony from a vocational expert. Plaintiff's complaint (Doc. 2) is **DENIED**.

## II. Background

### *A. Procedural History*

Plaintiff Gary E. Bowling was born on April 1, 1950 (Tr. 246). He was 51 years old at the alleged onset-of-disability date of December 15, 2001. Plaintiff has a high-school education and worked from January 1987 until December 2001 as a mechanic, laborer, and cook (Tr. 268). Plaintiff alleged Chronic Obstructive Pulmonary Disease ("COPD"), arthritis, back pain, and bad feet as his disabling conditions. He alleged that as a result of these conditions he cannot lift over ten pounds, grip anything, stand or sit for long periods of time, and he has difficulty breathing (Tr. 267). Plaintiff indicated that since his alleged onset of disability he has worked intermittently repairing lawnmowers for cash. He stopped working altogether on October 1, 2005 (Tr. 267).

Plaintiff first applied for disability insurance benefits on February 1, 2006 (Tr. 246–50). His application was denied, both initially and again upon reconsideration (Tr. 226–39). He then requested a hearing before ALJ Zane A. Lang. The ALJ held a hearing, yet still came to the conclusion that plaintiff was not disabled (Tr. 12–25). The Appeals Council denied review (Tr. 1–8), and thus the ALJ's decision became final. 20 C.F.R. § 416.1481; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### *B. Plaintiff's Activities of Daily Living Questionnaire*

On March 15, 2006, the plaintiff completed an Activities of Daily Living Questionnaire (Tr. 273–75). He indicated that arthritis in his hands made it difficult to open lids on jars, pick up coins, and hold a pen. He also reported difficulty carrying bags of groceries, baskets of laundry, or bags of trash. He reported that pain in his feet and ankles made walking difficult. He did not drive or travel. He reported loss of balance and pain in his feet and ankles upon getting out of bed or out of a chair. He reported that climbing stairs caused pain in his feet and ankles and opined that he could climb 15 or 20 stairs. He reported that he used a cane to assist with walking and balancing. He said he could not sit for two hours without experiencing numbness in his legs and back pain. Pain in his feet and ankles prevented him from shopping or preparing a meal without taking rest breaks. He indicated that he must rest a few minutes every hour. He stated that he performed no household chores. He indicated that he was able to mow his lawn on a riding mower, but had to stop frequently to rest his back. He indicated that he previously fished out of a boat, but could no longer do so because he cannot sit for extended periods of time (Tr. 273–75).

### *C. Hearing Before the ALJ*

Plaintiff appeared before the ALJ on September 9, 2008. He was represented by counsel. Also present was Dr. June Hagen, a vocational expert.

Plaintiff testified that he was 58 years old at the time of the hearing and had

a high-school education (Tr. 212). He testified that he was not working and had not worked since April 1, 2005, at which time he was working as a laborer moving antique furniture (Tr. 207). When prompted by his attorney, however, plaintiff stated that his actual last date of work was January 2001. In 2005 he was only repairing lawn mowers out of his home on a part-time basis. He sometimes lifted 50-pound push mowers but used jacks for heavier riding mowers. Plaintiff testified he made approximately $200 per week repairing lawn mowers (Tr. 208–09).

In 2001 he worked part-time moving furniture. In that job he was sometimes required to lift 200 or 250 pounds by himself. He stopped doing that job in January or February 2002 (Tr. 209–10). The ALJ asked him about lifting requirements in other pre-onset jobs he performed. He testified that in his job at Wal-Mart changing the oil in cars, he was not required to lift more than 15 or 20 pounds. He testified that as a cashier he was required to lift 40- or 50-pound cases for stocking shelves (Tr. 210). In his job as a cook, he was required to lift 40 or 50 pounds by himself (Tr. 211). In his job installing tarps, he had to lift 150 or 200 pounds (Tr. 211). In his job stretching aluminum he had to lift up to 100 pounds (Tr. 211–12). In his job building tractor trailers, he was required to lift approximately 100 pounds (Tr. 212).

Plaintiff testified that he was no longer capable of performing any of the aforementioned jobs because, "Between my hands and my back, I can't do anything anymore" (Tr. 212). He specified that he could not grip with his hands and that he had three discs in his back that are "gone" and two other discs "on the way out" (Tr. 213).

Dr. June Hagen, a vocational expert, testified regarding plaintiff's past work. She testified that his job as a cashier was considered to have a light exertional level (although she classified it as medium as performed) and semi-skilled with a specific vocational preparation ("SVP") value of 3.[1] She testified that his job as a cook was medium and skilled, with an SVP of 7. His job as a tune-up mechanic was light and unskilled, with an SVP of 5. The job of furniture mover was medium (although performed as very heavy) and unskilled, with an SVP of 10. The job of lawn-mower mechanic was medium and skilled, with an SVP of 6. The job as an extrusion-press operator was medium (performed as heavy) and skilled, with an SVP of 5. The job of brake mechanic was classified as medium (performed as heavy) and skilled, with an SVP of 6 (Tr. 215–17).

The ALJ asked plaintiff whether he would be capable of performing his past job as a cashier if he were not required to perform the stocking duties. Plaintiff replied that he would not because he could not stand for more than 30 minutes at a time. He also testified that it would not be feasible to do the job while sitting on a stool (Tr. 217–18).

Dr. Hagen testified that a hypothetical individual of plaintiff's age, education, and work experience who could lift 50 pounds occasionally and 25 pounds frequently; who could sit, stand, or walk six hours in an eight-hour day, with only occasional climbing; and with limited in exposure to environmental irritants could

---

[1] The Dictionary of Occupational Titles ("DOT") lists an SVP value for each described occupation. Generally, unskilled work corresponds to an SVP of 1–2, semi-skilled work corresponds to an SVP of 3–4, and skilled work corresponds to an SVP of 5–9. SSR 00-4p. *See also* 20 C.F.R. § 404.1568.

perform plaintiff's past work as a cashier, cook, manager, and deliverer of merchandise as generally performed. She added that a limitation on handling and fingering objects would eliminate only the cashier job (Tr. 218–19).

Dr. Hagen testified that a hypothetical individual of plaintiff's age, education, and work experience who could lift 20 pounds occasionally and 10 pounds frequently, with frequent but not constant handling or fingering bilaterally, would not be able to do any of plaintiff's past work. But plaintiff's cooking skills were transferable, so he would be able to perform the job of short-order cook, which is light work and semi-skilled, with an SVP of 3. She testified that 175,000 such jobs exist in the national economy and 230 exist in southern Illinois (Tr. 219–220).

Finally, Dr. Hagen said that a hypothetical individual of plaintiff's age, education, and work experience who could not work five days a week for eight hours a day due to back, hand, and leg pain could not perform any of plaintiff's past work (Tr. 221).

### *D. The ALJ's Opinion*

The ALJ rendered a decision denying benefits on September 24, 2008 (Tr. 12–25). The ALJ evaluated plaintiff under the Social Security Administration's five-step sequential process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

At step one of the analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 1, 2005, the alleged onset-of-disability date, as

amended (Tr. 14). At step two, the ALJ found that plaintiff had the following severe impairments: COPD, degenerative disc disease, arthritis, alcohol abuse, and obesity (Tr. 14). The ALJ found that plaintiff's COPD was severe because (1) plaintiff smoked 1–2 packs of cigarettes per day, (2) March 2006 testing showed decreased breath sounds, (3) November 2006 testing confirmed COPD by x-ray, and (4) plaintiff had reported shortness of breath. The ALJ found plaintiff's arthritis severe based on x-rays that displayed flexion deformities in the finger joints of both hands. He found plaintiff's alcohol abuse severe due to heavy alcohol consumption documented over a three-year period. He found plaintiff's obesity and degenerative disc disease severe based on June 2008 x-rays, which revealed levoscoliosis of the lumbar spine with osteophyte spurring of the L3-L4 vertebra. The x-ray also indicated severe degenerative disc disease with vacuum phenomenon at L3-L4 and L5-S1 and other degenerative changes at L4-L5. On examination, plaintiff had pain, diminished reflexes, and positive straight-leg raising on the left side (Tr. 15–17).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found insufficient evidence in the record that plaintiff suffered from chronic shortness of breath or wheezing, and no indication of any other persistence of COPD symptoms that would support a finding that plaintiff's COPD met or equaled any respiratory-system listing (Tr. 18). Regarding plaintiff's degenerative disc disease, the ALJ found that none of the objective imaging studies in the record indicated the involvement of a nerve root, and

plaintiff's other positive evidence (specifically, the June 2008 reflex loss and positive straight-leg raising) was insufficient to support a finding that a disorder of the musculoskeletal system was met (Tr. 18–19). Further, the ALJ found that while plaintiff had displayed repeated, heavy alcohol use and had been diagnosed with alcohol abuse, he had not demonstrated the involvement of another body system (such as central-nervous-system disorder, liver damage, or anxiety or depressive disorder), which is necessary to meet a listing for substance-abuse disorder (Tr. 19). The ALJ also considered plaintiff's obesity in combination with his degenerative disc disease and found that "the same durational issues remain." Specifically, there was insufficient evidence that plaintiff's obesity in combination with his degenerative disc disease resulted in "a greater musculoskeletal effect" that met or equaled a listed impairment. And finally, the ALJ considered plaintiff's arthritis and found that while imaging demonstrated "flexion deformities" in the joints of both hands, there was no involvement of a major peripheral joint to meet or equal a listing. In addition, the ALJ found that plaintiff tested negative for rheumatoid arthritis, and therefore could not meet or equal the listing for an immune-system disorder (Tr. 19–20).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work, with the following restrictions: he could only occasionally climb stairs or ramps; could never climb ladders, ropes, or scaffolds; could never be exposed to fumes, odors, gases, or other environmental irritants; and could frequently (but not constantly) handle and finger objects. In making this finding, the ALJ determined that plaintiff's assertions concerning the intensity,

persistence, and limiting effects of his symptoms were not credible because they were inconsistent with his medical records. The record contained "very little evidence" that plaintiff's pain and medical condition reduced his normal functional capacity. The ALJ reported, "It is simply not consistent for an individual who allegedly needs to use a cane and who allegedly has trouble getting out of a chair, as the plaintiff represented, to be able to do heavy lifting, as the plaintiff has repeatedly reported to his medical providers, during the same time periods." The ALJ also noted evidence in the record of a pattern of plaintiff being uncooperative or not complying with medical treatment (Tr. 21–22).

The ALJ also considered the opinions of plaintiff's examining and treating physicians in determining plaintiff's RFC. The ALJ gave less weight to the functional assessments of agency physicians who determined plaintiff could perform medium work because those opinions predated a 2008 x-ray which confirmed "a more advanced level of disc degeneration than had been previously documented in the plaintiff's medical file." In light of that medical evidence, the ALJ found that plaintiff could perform light work with the aforementioned restrictions (Tr. 22). Based on plaintiff's RFC for light work with restrictions, the ALJ determined that plaintiff was unable to perform any of his past work (Tr. 23).

At step five, the ALJ noted that plaintiff was born on April 1, 1950, and was 55 years old, "which is defined as an individual closely approaching advanced age," on the alleged disability onset date. He noted that plaintiff had at least a high-school education, was able to communicate in English, and had acquired work skills from

past relevant work. According to Dr. Hagen, a hypothetical individual with the same age, education, past relevant work, RFC, and transferable cooking skills as plaintiff could perform the job of short-order cook. She identified 230 such jobs locally and 175,000 in the national economy (Tr. 24). Based on Dr. Hagen's testimony, the ALJ determined that plaintiff's work skills from past relevant work were transferable to other occupations with jobs existing in the national economy (Tr. 23–24). The ALJ concluded: "Accordingly, although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.15." (Tr. 24).

### III. <u>Discussion</u>

To receive disability benefits, a plaintiff must be disabled. A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the plaintiff is currently

employed and doing substantial gainful activity, (2) whether the plaintiff has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the plaintiff has the residual functional capacity ("RFC") to return to doing his or her past work, and (5) whether the plaintiff is capable of making an adjustment to some other type of work available in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Clifford v. Apfel*, 227 F. 3d 863, 868 (7th Cir. 2000). If the plaintiff does not have a listed impairment but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the plaintiff can perform some other job. *Id.*

Under the Social Security Act, a court must sustain an ALJ's decision unless it is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Labonne v. Astrue*, 341 F. App'x 220, 224 (7th Cir. 2009). In addition, the party seeking to overturn an agency's administrative decision bears the burden of showing that an error was harmful. *Shinseki v. Sanders*, 129 S. Ct. 1696, 1705 (2009); *see also Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (doctrine of harmless error applies to judicial review of administrative decisions).

The standard of substantial evidence is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted). An ALJ need not address every objective finding in the record for his judgment to be supported by

substantial evidence. The ALJ "need only build a bridge from the evidence to his conclusion." *Sims v. Barnhart,* 309 F.3d 424, 429 (7th Cir. 2002) (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). An ALJ's decision, however, "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

Because the Commissioner is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* However, if the Commissioner makes a decision as to a matter of fact that is unreliable because of "serious mistakes or omissions," reversal is required unless the court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### IV. Analysis

Plaintiff raises only one issue in this appeal, namely that the ALJ made an error of law by using Medical-Vocational Rule 202.15 in finding plaintiff not disabled (Doc. 20, pp. 6–7).[2] Plaintiff argues that the ALJ erroneously determined that plaintiff at age 55 was an "individual closely approaching advanced age," when in fact the regulations specify that individuals 55 and over are of "advanced age." 20 C.F.R.

---

[2] *Jones v. Shalala*, 10 F.3d 522, 525 n. 4 (7th Cir. 1993)). Accordingly, the Court limits its discussion to the portions of the record relevant to this issue only.

§ 404.1563(e). Plaintiff argues that, given his education and transferable skills, Rule 202.06 for an individual of advanced age dictates an outcome of disabled (Doc. 20, pp. 6–7).

The Medical-Vocational Guidelines (the "grids"), "reflect the Social Security Administration's determination that certain combinations of age, education, work experience, and exertional limitations direct a finding of either disabled or not disabled at step five of the disability analysis." *Abbott v. Astrue*, 391 F. App'x 554, 556 (7th Cir. 2010) (citing 20 C.F.R. § 404.1569 and 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a)). Use of the grids is mandatory when a plaintiff's vocational factors and RFC "coincide with all the criteria of a particular rule." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a); *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005). But in cases where a plaintiff's RFC falls between the categories of work contemplated by the grids (for example, a plaintiff can perform the full range of sedentary work, but not the full range of light work due to other limitations), their use is not required. Instead the ALJ must give them consideration or use them as a framework in conjunction with the "factors and principles set forth in the regulations." *Haynes*, 416 F.3d at 629. Consultation with a vocational expert may be helpful or required. *Id.* at 628 (citing SSR 83-12); *Fast v. Barnhart*, 397 F.3d 468, 472 (7th Cir. 2005) ("[W]here the grids do not address a particular problem, the ALJ is entitled to rely on the expert testimony of a [vocational expert].").

The Court finds that the ALJ did err in citing Medical-Vocational Rule 202.15, the rule for individuals closely approaching advanced age, but that error was

harmless. At the time of plaintiff's alleged onset of disability (April 1, 2005, as amended) he was 55 years old, which is an individual of advanced age. 20 C.F.R. § 404.1563(e). Thus, the ALJ's reference to Rule 202.15 was a mistake.

Plaintiff contends that the ALJ should have used Rule 202.06 for those of advanced age whose previous work experience is skilled or semi-skilled and transferable (Doc. 20, p. 7). Rule 202.06 accounts for (1) ability to perform light work, (2) a high-school education, (3) no transferable skills, and (4) advanced age, and dictates an outcome of disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06. Plaintiff is wrong, however, because he was found to have transferable cooking skills, and Rule 202.06 applies to those with no transferable skills. In fact the ALJ should have used Rule 202.07, which accounts for (1) ability to perform light work, (2) a high-school education, (3) transferable skills, and (4) advanced age. § 202.07. Under that rule, the grids indicate a finding of not disabled. Because the outcome under the proper guideline, Rule 202.07, is "not disabled," the Court concludes that the mistake on the part of the ALJ was harmless and therefore not reversible. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (remand a "waste of time" where it is "predictable with great confidence that the agency will reinstate its decision on remand"); *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).

Moreover, Rule 202.15 itself did not dictate the outcome here. The ALJ had found plaintiff was capable of light work subject to certain restrictions. Since plaintiff was not capable of all light work, the ALJ only needed to give consideration to the grids or use them as a framework. *E.g., Haynes v. Barnhart*, 416 F.3d 621, 629 (7th

Cir. 2005). And the ALJ's opinion states he was using the Rule 202.15 as a framework (Tr. 24). In this situation he was permitted to consult a vocational expert, and did so. Dr. Hagen testified that a hypothetical individual of plaintiff's age, education, transferable cooking skills, and RFC could perform the job of short-order cook and that such jobs exist in significant numbers in the national economy. Plaintiff does not contest Dr. Hagen's testimony or the conclusion that his skills were transferable (Doc. 20, p. 7).

## V. Conclusion

The Court concludes that the ALJ's reference to Medical-Vocational Rule 202.15 was harmless error. Both Rule 202.07 as a framework and the vocational expert's testimony support the ALJ's determination that plaintiff was not disabled. Plaintiff's complaint (Doc. 2) is therefore **DENIED** with prejudice. The Agency's decision is affirmed and judgment will be entered for the defendant.

**IT IS SO ORDERED**.

Signed this 30th day of March, 2011.

Digitally signed by David R. Herndon
Date: 2011.03.30 10:48:34 -05'00'

**Chief Judge**
**United States District Court**